# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CHRISTINE M. PIKE, )
)
        Plaintiff, )
)
v. ) Case No. CIV-17-55-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
)
        Defendant. )

## OPINION AND ORDER

The claimant Christine M. Pike requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 14, 1971, and was forty-four years old at the time of the administrative hearing (Tr. 29). She completed her GED, and has worked as an accounting clerk, retail manager, and customer service (Tr. 18, 180). The claimant alleges she has been unable to work since July 12, 2013, due to systemic lupus erythematosus, joint pain and stiffness, syncopal episodes, depression, fatigue, headaches, and myalgias (Tr. 179).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on October 25, 2013. Her application was denied. ALJ David W. Engel conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 6, 2015 (Tr. 10-20). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform light and sedentary work with respect to lifting/carrying/pushing/pulling, and that she could walk/stand two hours total in an eight-hour workday and sit six hours total in an eight-hour workday, with regular breaks. Additionally, he found that she could occasionally climb ramps/stairs,

bend, stoop, crouch, and crawl, and that she could never climb ropes/ladders/scaffolds or work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts. Furthermore, she could no more than occasionally reach overhead or use foot pedals. Finally, he found that she could understand, remember, and carry out simple to moderately detailed instructions in a work-related setting (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work that she could perform, *i. e.*, clerical mailer, circuit board assembly, and machine operator (Tr. 18-20).

## Review

The claimant alleges that the ALJ erred by: (i) failing to properly assess her RFC, including the assessment of a treating physician opinion and her credibility; and (ii) improperly concluding there were jobs she could perform. The Court agrees with the claimant's first contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of systemic lupus erythematosus, joint pain, depression, syncopal episodes, depression, fatigue, headaches, myalgias, and confusion (Tr. 14). The medical record in this case largely consists of treatment records from Dr. Ben Cheek, D.O., who saw the claimant at Family Medicine Clinic. The records date back to 2010, where the claimant's lupus was noted to be stable and nonprogressive at that time (Tr. 389). By 2013, the year of the alleged onset date, she was reporting increased joint pain, fatigue, arthralgias, dizziness, and unintentional weight gain (Tr. 271). On October 25, 2013, Dr. Cheek noted that the claimant's pattern of joint symptomatology had been progressively worsening, and she was positive for joint

stiffness, swelling, headaches, myalgias, weight gain, fatigue, and depression, as well as pain in bilateral shoulders and bilateral hips (Tr. 299, 362). He noted her symptoms were worse and she was having syncopal episodes (Tr. 299). By 2014, Dr. Cheek noted decreased range of motion findings for bilateral shoulder, back, and knee, in addition to continued fatigue, arthralgias, and depression (Tr. 339-341, 346-348, 351-353).

On November 12, 2013, Dr. Cheek completed a mental RFC questionnaire, indicating that the claimant had a diagnosis of depression, characterized by fatigue, lethargy, and poor social interaction (Tr. 308). Additionally, he explained that the claimant had chronic pain and fatigue with secondary depression due to inability to function (Tr. 308). Treatment notes also reflect that the claimant's lupus was possibly a contributing factor to her depression (Tr. 310).

On February 11, 2014, Dr. Cheek completed a physical Medical Source Statement (MSS), in which he indicated that the claimant could lift/carry less than ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday, and that she must periodically alternate sitting and standing to relieve pain or discomfort (Tr. 322-323). Additionally, he indicated that she was limited in pushing/pulling in the upper extremities due to pain in her shoulders and hips, and limited reaching and handling, but unlimited in feeling and fingering (Tr. 323-324). He also found she could only occasionally balance, but never climb, kneel, crouch, or crawl (Tr. 323). Finally, he indicated that she had environmental limitations related to temperature extremes, humidity/wetness, vibration, and hazards (Tr. 324).

A state reviewing physician found on November 27, 2013 that the claimant could perform the full range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk a total of six hours in an eight-hour workday, and sit six hours in an eight-hour workday, could perform unlimited pushing and pulling including operation of hand/foot controls, and had no postural, manipulative, or environmental limitations (Tr. 51-52). This was affirmed on reconsideration (Tr. 63-64). As to her mental impairments, state reviewing physicians concluded that the claimant could perform simple and some complex tasks, relate to others on a work basis, and adapt to a work situation (Tr. 53, 65).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as some of the medical evidence in the record. As to the opinions in the record, the ALJ recited Dr. Cheek's basic findings in the physical MSS, as well as the opinions of the state reviewing physicians, then gave little weight to Dr. Cheek's opinion, as well as little weight to the opinions of both state reviewing physicians with regard to the claimant's physical RFC, stating that all three opinions were inconsistent with the "totality of [unspecified] evidence" (Tr. 17). He then assigned great weight to the opinions of the state reviewing physicians with regard to the claimant's mental RFC, finding them consistent with the "totality of [unspecified] evidence" (Tr. 18). As to all of the treatment notes in the record, the ALJ *only* stated that they reflected that "the claimant is alert and oriented with appropriate affect and demeanor" (Tr. 18). He then found her not credible, noting that the "medical records are very thin to support the extremely limited RFC assessment

provided by what appears to be her treating source (who has only sporadic records to support these conclusions)" (Tr. 18).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the

weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physician. The ALJ's analysis, as described above, falls short in this case. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record. It appears that the ALJ took great pains to ignore essentially all evidence in the record other than the fact that she was alert and oriented, and had an appropriate affect and demeanor (Tr. 17-18). This is an improper assessment where the ALJ completely discounted the repeated notations in the record regarding the claimant's documented reduced range of motion, pain with range of motion, fatigue, arthralgias, and depression, and found that she was nevertheless able to perform the assigned RFC here, with the attendant total sitting/standing requirements and lift/carry requirements in an eight-hour workday. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Indeed, the ALJ rejected every opinion in the record regarding the claimant's physical limitations and there is no explanation for how the claimant's limitation to light and sedentary work accounts for her severe physical impairments, nor does it properly account for the combined effects of her impairments, as specifically noted by her treating physician. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In addition to the recommendation for remand for the above reasons, the undersigned Magistrate Judge further notes the claimant's assertion that the ALJ erred in his credibility analysis. Since the ALJ's opinion was issued, the Social Security Administration has eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). Accordingly, in light of the remand in this case for the aforementioned error with regard to the treating physician opinion, on remand the ALJ should also apply the Soc. Sec. Rul. 16-3p to analyze the intensity, persistence, and limiting effects of the claimant's alleged impairments on remand.

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proper analysis of the claimant's RFC in light of *all* the evidence and *all* of the claimant's impairments. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**